No. 25,943.

JOSEPH G. KASPER, *Appellee,* v. THE KANSAS CITY, LEAVENWORTH & WESTERN RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

WORKMEN'S COMPENSATION—*Relation of Parties—Special Findings—Evidence.* The proceedings in a compensation case considered, and *held:* (*a*) The evidence was sufficient to support the special findings of the jury and judgment of the court. (*b*) The court having adopted the findings of the jury, it was not error to refuse to make certain additional findings of fact. (*c*) No error was committed in overruling the defendant's amended motion for a new trial. (*d*) Other alleged errors considered and found to be of no substantial merit.

Appeal from Wyandotte district court, division No. 3. WILLIAM H. Mc-CAMISH, judge. Opinion filed May 9, 1925. Affirmed.

*McCabe Moore,* of Kansas City, and *H. M. Langworthy,* of Kansas City, Mo., for the appellant.

*A. J. Herrod,* of Kansas City, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The defendant appeals from a judgment of $1,938.43 awarded plaintiff under the workmen's compensation law. The action was originally brought in December, 1920, under the federal employer's liability act. Judgment was obtained by the plaintiff, and in an appeal to this court was reversed and remanded for a new trial. (*Kasper v. Railway Company,* 111 Kan. 267, 207 Pac. 203.) A second appeal was prosecuted by the defendant from an order of the district court overruling a demurrer to an amended petition filed by the plaintiff, the judgment of the trial court being affirmed. (*Kasper v. Railway Co.,* 115 Kan. 610, 223 Pac. 1106.)

The defendant is a Kansas corporation operating an electric railway from Fort Leavenworth, Kan., to Kansas City, Kan., the traffic continuing on to Tenth and Main streets, Kansas City, Mo., over the tracks of the Kansas City Railway Company under a lease agreement with that company. Plaintiff was employed by the defendant as a motorman. He was operating car No. 24. Car No. 23 was about 400 feet ahead of him, and when about 200 feet west of the Kansas state line on the intercity viaduct between Kansas City, Kan., and Kansas City, Mo., car No. 23 stopped. The plaintiff's car at the time was traveling about ten miles per hour. He applied the air brake, but it did not work. He reached for his reverse lever and operated it, but it failed to take hold, and his car ran into the back end of car No. 23. He was sitting on the stool in the motorman's compartment and the force of the collision forced the controller box against his knee, bending his leg under the stool. The ligaments were torn from his knee-cap and his hip and ankle crushed and bruised.

In the original case here (*Kasper v. Railway Co.*, 111 Kan. 267) it was said:

"An interurban railway company which confines its business to transportation of passengers and goods from place to place within the state, but which rents its cars and transfers its employees to the service of a street-railway company for street-car traffic in Kansas City, Kan., and Kansas City, Mo., located contiguously on opposite sides of the Kansas-Missouri state line, is not engaged in the sort of interstate commerce which is governed by the federal safety-appliance act.

"In an action for damages to an injured employee against an interurban railway company which confines its business to intrastate traffic, except as that traffic may be altered or qualified by the loan of its cars and employees to another company for street-railway service operated across a state line, it is immaterial whether such action be brought under the state law or the federal employer's liability act, where the state and federal acts are substantially similar in text and effect—following *Kansas City Ry. v. McAdow*, 240 U. S. 51, 60 L. Ed. 520.

"Where the services of an employee have been transferred by his master to another master, the question whether the employee should look to his own master or to his special master for compensation or damages for injuries depends upon whether or not the employee knew or should have known that his services were thus transferred—following *King v. Railway Co.*, 108 Kan. 373, 195 Pac. 622." (Syl. ¶¶ 1, 2, 3.)

In the trial now under consideration the jury answered special questions as follows:

Kasper v. Kansas City, L. & W. Rly. Co.

"Q. 1. For how many weeks do you find (if any) that plaintiff was wholly incapacitated and disabled from performing work and labor as a result of the accident complained of? A. Twenty-one weeks.

"Q. 2. Was the period of his total incapacity (if any) followed by a partial disability to perform work and labor? A. Yes.

"Q. 3. If you answer question No. 2 'yes,' then state the duration in weeks, both past [and] in the future of such partial disability or incapacity. A. Two hundred and thirty-nine weeks.

"Q. 4. Was the work performed by Kasper in operating car No. 24 after it left Fourth and Minnesota avenue, in Kansas City, Kan., eastward to Kansas City, Mo., and return, under the control; management and supervision of the Kansas City Railways Company? A. Yes.

"Q. 5. Did Kasper know that the defendant's tracks ended at Fourth and Minnesota avenue in Kansas City, Kan.? A. Yes.

"Q. 6. Did plaintiff know when at the place he received his alleged injury that he and said car No. 24 were both under the supervision and control of the Kansas City Railways Company? A. No.

"Q. 7. Did witness Fowler, who 'broke in' plaintiff as a motorman, tell plaintiff, in substance, that when he left Fourth and Minnesota avenue in Kansas City, Kan., and went eastward into Kansas City, Mo., that he was working for said Railways company? A. No.

"Q. 8. Did plaintiff read all of the notices and bulletins posted by the defendant for its employees to read? A. No.

"Q. 9. Was there a bulletin or notice posted by the defendant for plaintiff to read, stating in substance that when a motorman was operating his car between Fourth and Minnesota avenue in Kansas City, Kan., and Tenth and Main streets in Kansas City, Mo., that he was an employee of the Street Railways company? A. No.

"Q. 10. Did the plaintiff make demand for compensation from the defendant within three months following the date of the accident? A. Yes.

"Q. 11. If you answer the last question 'yes,' state of whom he demanded compensation? A. Flowery and Moor [Moore].

"Q. 12. State what amount per week plaintiff has been and will be most probably able to earn in some suitable employment since the date of the accident. A. $15."

It is contended by the defendant that the evidence was insufficient to go to the jury, and that the court erred in overruling its demurrer to the evidence. Without detailing the evidence, it is sufficient to say that it was abundantly sufficient to support the findings and judgment of the court.

The defendant contends that the plaintiff was engaged in interstate commerce, and was at the time of his injury working for another party than the defendant; that he could not plead ignorance of the law of the city where he was to perform his work, neither could be plead ignorance of the law of the state of Kansas; that he

was not injured "on, in or about the premises on which his principal had undertaken to execute work, or which are otherwise under his control or management, or in or about the execution of such work under his control or management." The objections and arguments of the defendant were sufficiently treated in the original opinion in *Kasper v. Railway Co.*, supra, which makes it unnecessary to again discuss them.

It is argued that the court erred in its refusal to make certain special findings requested by the defendant. It appears, however, that the matters in issue were all submitted to the jury in its advisory capacity; that the jury made the findings herein set out, which were adopted by the court. Under the circumstances, the court having given the whole matter full consideration, no error was committed in its refusal to make other and further findings.

We have considered the various complaints of the defendant but find no error which would justify a reversal.

The judgment is affirmed.